IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL BENDER,<br><br>　　　　　　Defendant. | 8:22CR83<br><br><br>MEMORANDUM<br>AND ORDER |

　　　　This matter is before the Court on the magistrate judge's[1] Findings and Recommendation (Filing No. 60) that defendant Michael Bender's ("Bender") Motion to Suppress (Filing No. 34) be denied. For the following reasons, the Court accepts the Findings and Recommendation and overrules Bender's objections (Filing No. 68).

**I.　　BACKGROUND**

　　　　Bender has moved to suppress "all evidence derived from law enforcement's . . . seizure and search of a package at" a United Parcel Service ("UPS") facility located in Omaha, Nebraska, on February 15, 2022, including "the controlled substances alleged[ly] . . . found in the package" and phone seized "subsequent to the search and seizure."

　　　　A UPS security agent, David Bekaert ("Bekaert"), opened the package in question. The parties dispute whether Bekaert's search of the package was a private search or government search that violated the Fourth Amendment to the United States Constitution. *See United States v. Highbull*, 894 F.3d 988, 991-92 (8th Cir. 2018) ("'[T]he Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative' but it does 'protect against such intrusions if the private

---

[1] The Honorable Michael D. Nelson, United States Magistrate Judge for the District of Nebraska.

party acted as an instrument or agent of the Government.'") (quoting *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614 (1989)). Bender contends Bekaert acted under the color of authority of agents from the Drug Enforcement Administration's Commercial Interdiction Unit (the "DEA agents") when he opened the package. In contrast, the government argues Bekaert was "permitted to open the package, under these facts, without becoming an agent of the government."

The magistrate judge held a suppression hearing on November 15, 2022. Three witnesses testified for the government: two DEA agents—Nebraska State Patrol Trooper Steven Peck ("Agent Peck") and Pottawattamie County Sheriff's Deputy Brian Miller ("Agent Miller")—along with Bekaert.

Agent Peck first testified that he and other DEA agents "work narcotics interdiction" at shipping companies and "mass transit facilities and attempt to locate people trafficking narcotics or currency." To identify "suspicious" packages, DEA agents "look for certain items on the packages, who it's coming from, where it's going to, if it's coming from a source city of narcotics, heavily taped packages, obviously plain odor of narcotics." They use databases to try to confirm the identities of senders and recipients. If a DEA agent reports a package as suspicious, typically a police K-9 "sniff[s] the package," and if the K-9 alerts to the presence of narcotics DEA agents "write a search warrant for the package." Only then, according to Agent Peck, do DEA agents open packages.

Agent Peck testified he worked at the relevant UPS facility on February 15, 2022, along with Agent Miller. They worked "the expedited shipments" that day. A particular package caught Agent Peck's attention. After conducting a "preliminary investigation," Agent Peck could not locate the package's sender or recipient using available databases. The recipient name of "Lisa Romos" did not match the address on the package. The address appeared to be for an apartment complex and there were different names, drivers' licenses, and utilities associated with the building. Agent Peck testified he gave the package to Agent Miller, saying "[i]t needs a sniff." Agent Miller then "took it to the

security office" to prepare "to perform a K-9 sniff on it." This was the "normal practice," according to Agent Peck.

Agent Miller later brought Agent Peck to the security office, where Agent Peck noticed "the package had been opened." Agent Miller informed Agent Peck that Bekaert "had opened the package." Agent Peck said he was "kind of flabbergasted" Bekaert had opened it because that was unusual. Bekaert told Agent Peck he "could not find the address as a deliverable address" and then "exercised his company policies and opened the package." Agent Peck testified that he did not "have any contact with any UPS employees that day indicating that they should open" the package.

After discovering what appeared to be methamphetamine and cocaine in the package, Agent Peck and Agent Miller removed some and then "taped the package back up." They planned a controlled delivery to the recipient address with "a team of officers" later that day.

According to Agent Peck, Agent Miller posed as a UPS delivery person and asked for "Lisa Romos" when they arrived at the address. An individual named Frederick Knotts ("Knotts") answered the door and said "Solo" was expecting the package. Knotts made a phone call and Agent Miller left the package on the porch. Shortly after, Bender drove to the house wearing a t-shirt with the word "solo" on the back. Bender retrieved the package and was arrested.

On February 18, 2022, Agent Peck applied for a warrant to search a phone seized from Bender. Agent Peck testified the phone extraction showed chats between Bender and a third party with the package's address, as well as a photo of the package's tracking number.

Agent Miller testified next. He explained he took the package to Bekaert, the "UPS security manager," to try to verify the address and perform a "narcotics sniff." According to Agent Miller, he informed Bekaert the package was "suspicious," he "wasn't getting the

3

address to come back," and he "was going to try to conduct further investigation," including retrieving his K-9 from his vehicle outside to "run a sniff on the box." Agent Miller believed Google Maps showed the address was an apartment complex, and thus the address "should have had an apartment number on it."

Agent Miller gave the package to Bekaert. According to Agent Miller, Bekaert ran his own address check, and when it was unsuccessful, opened the package himself. Agent Miller watched Bekaert open the package and noticed it appeared to contain narcotics.

According to Agent Miller, Bekaert did not request permission to open the package. There was no discussion "one way or the other" about whether Bekaert should open it. Bekaert told Agent Miller UPS policies state that opening a package is one method for locating the recipient "to get that package to its final destination."

Finally, Bekaert testified about his decision to open the package. Bekaert agreed the recipient address appeared to be an apartment complex based on a Google Maps image Agent Miller showed him. Bekaert testified he did not independently verify the address. Bekaert observed "[t]he package had a ripped label" and tape "coming off of it a little bit," leading him to question "if it was damaged or not." Those factors influenced his decision to open the package. He testified he was "look[ing] for a packing slip to validate if there was a [sic] apartment number on the inside."

According to Bekaert, Agent Miller "was not directly near [him]" while he opened the package. Neither Agent Miller nor Agent Peck communicated with Bekaert regarding his decision to open it. Bekaert stated, "Agent Miller and . . . Agent Peck and several other law enforcement officers know that they—they have zero chance to direct me to open a package."

On cross-examination, Bender's attorney pointed out that Bekaert described the package as "crushed" in his report written later that day. Bekaert testified that this

4

description was accurate and explained "the tape was coming loose," "hanging up and off" and "not tight to the box," which created a "couple inches" of gap in the package.

In closing arguments, Bender's attorney argued the DEA agents made "a tacit request" to Bekaert "to get inside this package." The government, in turn, argued Bekaert took "the unilateral step of opening the package," and there was "no communication between any officers and the security officer to open the package."

The magistrate judge stated his findings on the record and recommended the motion to suppress be denied in its entirety. In particular, he found that "the evidence before the Court establishes that the search of the package was undertaken by UPS Security Investigator Dave Bekaert as a private employee and not at the government's direction."

Bender timely objected (Filing No. 68), and the government responded (Filing No. 72). Both reiterated their arguments from the hearing.

## II.   DISCUSSION

The Court has conducted a careful de novo review of the parties' arguments, the suppression hearing transcript, and the balance of the record in this case. *See* 28 U.S.C. § 636(b)(1). Viewing the totality of the circumstances, the Court agrees with the magistrate judge that Bekaert opened the package of his own accord and was not directed by either of the DEA agents.

The Fourth Amendment's right to be free from "unreasonable searches and seizures," U.S. Const. amend. IV, only extends "to actions undertaken by government officials or those acting at their direction," *Highbull*, 894 F.3d at 991. "The Fourth Amendment 'is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" *United States v. Avalos*, 984 F.3d 1306, 1307 (8th Cir. 2021) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

Courts consider three factors to "determine whether a private individual is acting as, or with the participation of, a government official: '(1) whether the government had knowledge of and acquiesced in the intrusive conduct; (2) whether the citizen intended to assist law enforcement or instead acted to further his own purposes; and (3) whether the citizen acted at the government's request.'" *Id.* at 1307-08 (quoting *Highbull*, 894 F.3d at 922). The key question is whether the citizen is "primarily motivated to help law enforcement." *United States v. Stephen*, 984 F.3d 625, 630 (8th Cir. 2021).

Here, the magistrate judge found the first factor weighs "in favor of an agency relationship because the government did have knowledge of and acquiesced in" Bekaert's actions. The Court finds it is at the very least a close call; Agent Miller testified he directly witnessed Bekaert open the package, and there is no evidence that Agent Miller protested. However, both Agent Miller and Bekaert testified that Agent Miller did not direct Bekaert in any way.

As to the second factor, the magistrate judge found Bekaert's testimony about opening the package to search for a packing slip was credible and indicates Bekaert opened the package through private conduct. The evidence shows both Agent Peck and Agent Miller had good-faith beliefs the package was suspicious after conducting address searches. Agent Miller found the address on Google Maps and showed the images to Bekaert. Both parties testified to believing the address was incorrect since the aerial photos appeared to show an apartment building, but the address contained no apartment number.

According to Bekaert's testimony, he decided to open the package to look for a packing slip based on his belief in the incorrect address and his observation the package was "crushed"—with tape "coming off," a torn shipping label, and a two-inch gap. Bekaert made his observations about the "crushed" condition based on more than eighteen years of industry experience. He also testified, without challenge, that he opened the package in accordance with UPS policies.

6

Finally, the Court agrees with the magistrate judge that "the record contains no evidence that Bekaert was acting at the government's request." Nothing in the record indicates the DEA agents spoke with Bekaert about opening the package or otherwise directed him in any way. Bender's contention that the DEA agents made a silent, "tacit request" of Bekaert is unavailing. Bender has not shown that Bekaert was "motivated solely or even primarily by the intent to aid the" DEA agents rather than an intent to comply with UPS policies and ensure delivery of the package. *Highbull*, 894 F.3d at 993; *see also Stephen*, 984 F.3d at 629 ("[W]here the government did not know of, acquiesce in, or request [the] conduct—and where nothing else indicates governmental entanglement—there was simply no government participation, irrespective of . . . private intent.").

The Court agrees with the magistrate judge that Bekaert conducted a valid private search of the package. Accordingly,

    IT IS ORDERED:
1. Defendant Michael Bender's objections (Filing No. 68) are overruled.
2. The magistrate judge's Findings and Recommendation (Filing No. 60) is accepted.
3. Bender's Motion to Suppress (Filing No. 34) is denied.

Dated this 11th day of April 2023.

    BY THE COURT:

    Robert F. Rossiter, Jr.
    Chief United States District Judge